FILED

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

2023 APR 10 P 4: 38

|  |  |
|---|---|
| ROBERT M. MILLER, | Civ. Case No: 1:23-cv-195 |
| *Plaintiff,* | |
| v. | |
| MERRICK B. GARLAND, et al., | |
| *Defendants.* | |

## REPLY TO DEFENDANTS' OPPOSITION TO

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Robert M. Miller, Ph.D.
4094 Majestic Ln, #278
Fairfax, VA 22033
(415) 596-2444
RobMiller44@hotmail.com

April 10, 2023

## TABLE OF CONTENTS

LEGAL STANDARDS ...................................................................................................1

ARGUMENT ...............................................................................................................2

   I.   Plaintiff Is Certain to Succeed on the Merits....................................................2

      A.   The Rule's Immediate Effective Date Was Unlawful. .....................................2

          1.   The Rule Is a Legislative Rule ................................................................2

          2.   The Rule's Immediate Effective Date Violated the APA and CRA............................3

      B.   The Rule's Provisions Clearly Violate the Administrative Procedure Act. ....................4

          1.   Plaintiff Has Standing and States a Claim..................................................4

          2.   Defendants' Classification Criteria Are Arbitrary and Capricious. ............................5

          3.   The Rule of Lenity Favors Defining Braced Pistols As Pistols ..................................6

          4.   The Rule Is Unconstitutionally Vague. ........................................................9

          5.   The Rule's Regulatory Analysis Was Atrocious......................................................10

      C.   The Rule, NFA, and GCA Violate the Second Amendment .........................................16

      D.   The Rule Addresses a Major Question that Congress Did not Delegate......................19

      E.   The Rule Imposes *Ex Post Facto* Criminal Liability. ...............................................20

      F.   Plaintiff Will Suffer Irreparable Harm. ..........................................................21

      G.   Public Interest and Balance of Equities Favor Plaintiff. .............................................21

      H.   This Court Should Issue a Nationwide Injunction. .....................................................21

CONCLUSION ............................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 84 (D.D.C. 2018) ..................................... 1

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970) ............................ 4

*Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 449 (D.C. Cir. 2012) ............. 11

*Blackhawk Industries Products Group Unlimited LLC v. United States General Services Administration*, 348 F. Supp. 2d 662, 670 (E.D. Va. 2004) ........................................................ 4

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) ......................................................... 5

*Chamber of Commerce v. Sec. and Exch. Com'n*, 412 F.3d 133 (D.C. Cir. 2005) ........................ 11

*Chamber of Commerce v. Sec. and Exch. Com'n*, 412 F.3d 133, 143 (D.C. Cir. 2005) ................ 10

*City of Mesquite v. Aladdin's Castle. Inc.*, 455 U.S. 283 (1982) ..................................................... 6

*Deja Vu of Nashville, Inc. v. Metropolitan Government*, 274 F.3d 377, 395 (6th Cir. 2001) ....... 19

*Garrity v. New Jersey*, 385 U.S. 493, 500 (1967) ............................................................................ 17

*Groyned v. City of Rockford*, 408 U.S. 104 (1972) ........................................................................... 7

*Hall v. United States*, 44 F.4th 218, 235 (4th Cir. 2022) ................................................................. 3

*Hias, Inc. v. Trump*, 985 F.3d 309 (4th Cir. 2021) ........................................................................ 22

*Hill v. Coggins*, 867 F.3d 499 (4th Cir. 2017) .................................................................................. 7

*Hope Natural Gas Company v. The West Virginia Turnpike Commission*, 143 W. Va. 913, 105 S.E.2d 630 ................................................................................................................................. 18

*Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94 (D.C. Cir. 2010) ................................................................................................................................ 11

*Jerri's Ceramic Arts, Inc. v. Consumer Product Safety Commission*, 874 F.2d 205, 207 (4th Cir. 1989) .......................................................................................................................................... 2

*Laclede Gas Co. v. F.E.R.C.*, 873 F.2d 1494, 1498 (D.C. Cir. 1989) .......................................... 11

*Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803) ........................................8

*March for Life v. Burwell*, 128 F.Supp.3d 116, 124 (D.D.C. 2015)...................................................1

*Motor Veh. Manu. Assoc. v. State Farm Auto Mut. Ins. Co.*, 463 U.S. 29 (1983) ...........................5

*Nat'l Labor Relations Bd. v. Mackay Radio & Telegraph Co.*, 92 F.2d 761, 762 (9th Cir. 1937) 18

*Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) ...............................................2

*National Maritime Union of America v. Herzog*, 78 F. Supp. 146 (D.D.C. 1948) ........................18

*New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, at *25 (June 23, 2022) .............16

*Northeast Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir. 1997)..........................................................................................................................................19

*Off. Comm. of United Church of Christ v. FCC*, 779 F.2d 702, 714 (D.C. Cir. 1985) .................11

*Public Citizen v. Fed. Motor Carrier Safety*, 374 F.3d 1209 (D.C. Cir. 2004)........................11, 13

*Public Citizen v. Fed. Motor Carrier Safety*, 374 F.3d 1209, 1221 (D.C. Cir. 2004)...................10

*Roe v. Dep't of Def.*, 947 F.3d 207, 231–233 (4th Cir. 2020).........................................................22

*Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).........................3

*Simon v. PNC Bank*, Civil No. 2:16-cv-388, at *16 (E.D. Va. Aug. 28, 2017) ..............................3

*Skilling v. United States*, 130 S. Ct. 2896, 292728 (2010) .............................................................10

*Tea Party Leadership Fund v. Fed. Election Comm'n*, Civil Action No. 12-1707 (RWR), at *2 (D.D.C. Nov. 2, 2012) .....................................................................................................................1

*United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)............................7

*United States v. Bruffy*, 466 F. App'x 239, 20 n.* (4th Cir. 2012) .................................................10

*United States v. Hill*, 927 F.3d 188, 212 (4th Cir. 2019)................................................................19

*United States v. Miller*, 307 U.S. 174 (1939) .................................................................................17

*United States v. Thompsen/Center Arms Co.*, 504 U.S. 505, 511 (1992).........................................7

*Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)................................................9

*Western Union Tel. Co. v. Kansas*, 216 U.S. 1................................................17

*Wilderness Watch, Inc. v. U.S. Fish & Wildlife Serv.*, 629 F.3d 1024, 1039 (9th Cir. 2010) .......11

*Williams Gas Processing-Gulf Coast Co., L.P. v. FERC*, 475 F.3d 319, 329 (D.C. Cir. 2006) ...10

*Williams v. Johnson*, 1:10-cv-823 (E.D. Va. Sep. 12, 2011)............................................7

*Williams v. Newport News Sch. Bd.*, 4:20-cv-41, at *32 (E.D. Va. Aug. 19, 2021) ......................2

*Yi v. Federal Bureau of Prisons*, 412 F.3d 526, 535 (4th Cir. 2005) ................................................7

## STATUTES

18 U.S.C. § 922 ................................................20

26 U.S.C. § 5845 ................................................16

5 U.S.C. § 553 ................................................3

5 U.S.C. § 702 ................................................4

5 U.S.C. § 705 ................................................4

5 U.S.C. § 706 ................................................4

5 U.S.C. § 801 ................................................3

## OTHER AUTHORITIES

EO 12,866................................................10

EO 13563................................................10

OMB Circular A-4................................................10, 11

## RULES

Fed.R.Civ.P. 65 ................................................1

*Objective Factors for Classifying Weapons with 'Stabilizing Braces.'* 85 FR 82516 ................2

iv

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ROBERT M. MILLER, <br>             *Plaintiff,* <br><br> v. <br><br> MERRICK B. GARLAND, et al., <br>             *Defendants.* | Civ. Case No: 1:23-cv-195 |

## REPLY TO DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff herein replies to Defendants' *Opposition*, ECF 22, to Plaintiff's application for a nationwide preliminary and permanent injunction ("*Application*"). ECF 7. Because Defendants failed to rebut any of the points and authorities in Plaintiff's application, the Court should issue a nationwide preliminary and permanent injunction pursuant to Fed.R.Civ.P. 65.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 65(a)(2) permits courts to consolidate a hearing on a preliminary injunction with trial on the merits, tempered by the due process principle of fair notice and opportunity to be heard. *Tea Party Leadership Fund v. Fed. Election Comm'n*, Civil Action No. 12-1707 (RWR), at *2 (D.D.C. Nov. 2, 2012). Rule 65(a)(2) motions are considered under summary judgment standards. *March for Life v. Burwell*, 128 F.Supp.3d 116, 124 (D.D.C. 2015); *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 84 (D.D.C. 2018). In doing so, the Court may rely solely upon those facts for which there is no reasonable dispute. *Id*. The Court may also decide the merits based on pure questions of statutory interpretation. *Id*.

1

## ARGUMENT

## I.   Plaintiff Is Certain to Succeed on the Merits.

### A.   The Rule's Immediate Effective Date Was Unlawful.

#### 1.   The Rule Is a Legislative Rule

Defendants cite authorities for their *general authority* to issue interpretive[1] rules, but rebut no arguments the rule is legislative. *Opp.* at 12-13. "[C]ourts are in general agreement that interpretative rules simply state what the administrative agency thinks the statute means, and only "remind" affected parties of existing duties." *Williams v. Newport News Sch. Bd.*, 4:20-cv-41, at *32 (E.D. Va. Aug. 19, 2021); *Jerri's Ceramic Arts, Inc. v. Consumer Product Safety Commission*, 874 F.2d 205, 207 (4th Cir. 1989). "In contrast, a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." *Id.* Consistent with this well-established interpretation, Defendants began to promulgate a guidance document on December 18, 2020, but withdrew it less than one week later. *Complaint* ¶¶ 104—105. *Objective Factors for Classifying Weapons with 'Stabilizing Braces.'* 85 FR 82516. Defendants later issued a Notice of Proposed Rulemaking ("NPRM") on June 10, 2021 with provisions to impose binding legal obligations and criminal liabilities on regulated parties. 86 FR 30826. The Rule retained all these obligations and liabilities. "An agency action that purports to impose legally binding obligations or prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations or requirements—is a legislative rule." *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014). "To promulgate a rule with the effect of law, federal administrative agencies generally must act pursuant to authority

---

[1] Statutes use the word "interpretative," but Courts often use the synonymous word "interpretive."

2

delegated by Congress and employ the notice and comment procedures specified by the Administrative Procedure Act." *Simon v. PNC Bank*, Civil No. 2:16-cv-388, at *16 (E.D. Va. Aug. 28, 2017). "Interpretive rules and other guidance documents are crafted without notice and comment rulemaking procedures. Interpretive rules lack the effect of law, and "simply state what the administrative agency thinks a statute means. Interpretive rules are not binding on courts or on members of the public . . . a court may choose to give binding effect to the position taken by an agency in an interpretive rule, but it is the court that provides the binding effect of law." [quotes and brackets omitted] *Id.*

2. The Rule's Immediate Effective Date Violated the APA and CRA.

The Rule took immediate effect on the date it was published in the Federal Register. 88 FR 6478. Agencies *must not publish* a substantive rule less than 30 days before its *effective* date. [emphasis added] 5 U.S.C. § 553(d). Congress's choice of the word "effective" rather than "enforcement" was advertent. "[W]hen a statute's text is unambiguous, the judicial inquiry is complete," *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *Hall v. United States*, 44 F.4th 218, 235 (4th Cir. 2022). The CRA required Defendants to delay the effective date by at least 60 days to provide Congress the opportunity to pass a joint resolution of disapproval. 5 U.S.C. § 801(a)(1)(A).[2] Defendants admitted the Rule was a "major rule." 88 FR 6574. The Rule put legal and financial obligations on Plaintiff *before* its effective date to put braced pistols into his NFA trust prior to the effective date. *Compl.* ¶¶ 264—274. Because of the unlawful effective date, this Court should issue a preliminary nationwide injunction delaying the effective

---

[2] Because Defendants proceeded with the Rule as an interpretative rule, it is not clear whether they complied with the Congressional reporting requirements of 5 U.S.C. § 801 either.

3

date of the Rule until the conclusion of this case. 5 U.S.C. § 705. But this Court may also properly hold the Rule unlawful and set it aside for these law violations. 5 U.S.C. § 706(2)(A).

**B.   The Rule's Provisions Clearly Violate the Administrative Procedure Act.**

1.   Plaintiff Has Standing and States a Claim

Defendants claim, "As a threshold matter, a facial APA challenge to the Rule is ill-suited for redressing Plaintiff's alleged injuries. One would expect Plaintiff to bring concrete challenges to ATF's actual classifications on the *particular* brace-equipped weapons that he possesses. After all, Plaintiff's alleged injuries stem from whether *his* weapons are short-barreled rifles subject to the NFA and GCA controls." *Opp.* at 12. Plaintiff's injuries establish his standing to sue in this Court under the APA and his entitlement to preliminary and permanent injunctive relief in both a facial and as-applied challenge. Once Plaintiff establishes standing pursuant to 5 U.S.C. § 702, he is not limited to challenging only those aspects of the Rule directly affecting him. This Court can hold the Rule is unlawful and set it aside for any of the reasons in 5 U.S.C. § 706(2).

Plaintiff's *Complaint* and *Application* demonstrate that firearms he owns that Defendants explicitly consider SBRs do not satisfy the Agency's own criteria. *Compl* ¶¶ 45—46, 127—138; *App.* at 25—26. ECF 17-1, Figs. 13, 15, 16, 44, 45. Defendants' argue Plaintiff's purported injury would be traceable to the NFA and GCA, not the Rule. *Opp.* at 12. Plaintiff's standing to sue in this case is predicated on the Rule's invocation of the NFA and GCA as authority for rulemaking. The APA does not independently confer standing, but rather it does so when a plaintiff's injuries are within the zone of interest of the statutes governing his actions. *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970); *Blackhawk Industries Products Group Unlimited LLC v. United States General Services Administration*, 348 F. Supp. 2d 662, 670 (E.D. Va. 2004). Thus, Plaintiff's injuries are *directly* attributable to the Rule.

2. Defendants' Classification Criteria Are Arbitrary and Capricious.

Defendants claim Plaintiff's arguments "rest on bare assertions that are contrary to basic principles of statutory construction." *Opp.* at 11. It is *obvious* from the statutory text that SBRs are *not* defined by any of the factors the Rule uses. Rifles are defined as firearms that are "designed to be fired from the shoulder." 18 U.S.C. § 921(a)(7). Defendants refuse to accept their own prior determinations and patents that stabilizing braces are designed to facilitate the use of a pistol with one hand. Plaintiff can use his braced pistols with one hand. ECF 17-1, Figs. 7, 13, 43. Agency decisions are arbitrary "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Veh. Manu. Assoc. v. State Farm Auto Mut. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*"), quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

There is no rational connection between a weapon being "designed to be fired from the shoulder" and having a long length of pull, a scope's short eye relief, weight or length, manufacturer marketing materials, or likely use by the community. The Rule failed to "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection' between the facts found and the choice made." *State Farm* at 43, quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

Defendants argue "One would expect Plaintiff to bring concrete challenges to ATF's actual classifications of the *particular* brace-equipped weapons that he possesses. After all, Plaintiff's alleged injuries stem from whether *his* weapons are short-barreled rifles subject to NFA and GCA

controls." *Opp.* at 12. Defendants later contradict themselves saying Plaintiff relies "principally upon his own use of particular brace-equipped pistols." *Opp.* at 16.

Plaintiff showed his Q Honey Badger that Defendants *explicitly* consider an SBR does not meet any of the factors in the Rule. *App.* at 25—26. Defendants fail to understand that only a single counterexample is sufficient to destroy a logical inference. The results would be the same if Plaintiff had the same scope, laser, or red dot sight on *any* braced pistol for *any* weight or length among the rifles Defendants considered for comparison. 88 FR 6514—6518. The Rule failed to consider that shooters have different arm lengths, finger lengths, and strength, and it rejected comments criticizing this lack of analysis. 88 FR 6484, 6521.

The Rule expressly relied on the manner in which *particular* shooters used *particular* braced pistols to infer that *all* braces are designed to be fired form the shoulder. 88 FR 6479. But Defendants later rejected public comments saying shooters can and do use braced pistols as braces. 88 FR 6484. Defendants cannot have this both ways.

Marketing materials and likely use by the community obviously play no role in the classification of firearms as rifles under the NFA and GCA. Defendants display bad faith by relying on manufacturer marketing materials that simply informed the public of ATF's classification decisions that braced pistols are not SBRs. Defendants even argue braces *look like* stocks. *Opp.* at 14. ("it is often hard to tell the firearm apart from weapons marketed explicitly as short-barreled rifles.") A similar appearance is obviously an arbitrary factor.

3. <u>The Rule of Lenity Favors Defining Braced Pistols As Pistols</u>

The Rule of Lenity is in play in light of the criminal aspect of the NFA, and it is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *City of Mesquite v. Aladdin's Castle. Inc.*, 455 U.S. 283, 289-90 (1982) (quoting *Groyned*

*v. City of Rockford*, 408 U.S. 104, 108 (1972)); *Hill v. Coggins*, 867 F.3d 499, 513 (4th Cir. 2017). The Rule of Lenity holds that where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *Yi v. Federal Bureau of Prisons*, 412 F.3d 526, 535 (4th Cir. 2005).

Defendants falsely claim Plaintiff suggested that "if a brace-equipped weapon is created from a *pistol*, it cannot be a rifle under § 5845(c) and § 921(a)(7). Mot. at 38, 41." *Opp.* at 15. Plaintiff argued that if a braced firearm could be classified as a pistol (designed to be fired with one hand) and a rifle, (designed to be fired from the shoulder), then the Rule of Lenity demands this Court consider it a pistol. This is because the definitions of rifles and pistols are not mutually exclusive.

Defendants turn on its head the U.S. Supreme Court's decision in *United States v. Thompsen/Center Arms Co.*, 504 U.S. 505, 511 (1992) where the Court favorably applied the Rule of Lenity. *Opp.* at 15. While the Court reasoned a combination of parts that could ***only*** be made into an SBR constituted the making of an SBR, it also held that the Contender kit did not violate the NFA because there were lawful combinations available to the user (a pistol or a rifle). The mere *possibility* a user could make an unlawful SBR was not sufficient to hold that the kit does so. Analogous to the instant case, a braced pistol is not an SBR because users *can* place it against their shoulder. It is definitively a pistol because they were designed to be fired with one hand.

Defendants argue the "factual record before ATF belies that assertion" that pistols with stabilizing braces are categorically designed and intended for single-handed fire. *Opp.* at 16. The factual record shows the original stabilizing brace was explicitly designed and patented for a firearm to be used with one hand, and the Agency admits that. 88 FR 6479. From 2012 through

7

2020, Defendants *repeatedly* issued classifications that braced pistols were not SBRs, even if the brace were placed against the shoulder.

Defendants misrepresent Plaintiff's argument saying, "Plaintiff concedes, an individual possessor's idiosyncratic use of a weapon 'does not alter its classification.'" That idiosyncratic uses do not alter a firearm's classification was *the Agency's position* for eight years. ("FATD advised that it does not classify weapons based on how a particular individual uses a weapon, and that merely firing an AR-type pistol from the shoulder did not reclassify it as a short-barreled rifle.") 88 FR 6484. Defendants try to eat their cake and have it too. First, they claim a handful of anecdotes of people using braces against the shoulder is proof braces were designed and intended to be fired from the shoulder. 88 FR 6479, n. 8. But when commenters argued they actually use braced pistols as braced pistols, Defendants responded, "The Department disagrees that the method in which a stabilizing brace may be used, in isolated circumstances or by a single individual, is relevant to examining whether a firearm is designed, made, and intended to be fired from the shoulder." 88 FR 6519.

Defendants beg the question claiming braced pistols "frustrate Congress's purpose in enacting the NFA and the GCA," "lead[s] to absurd results," and "permits manufacturers to circumvent the law." *Opp.* at 16. That is, Agency argues braced pistols are SBRs because they are SBRs. Rulemaking cannot be made by assertion, and whether braced pistols are SBRs is a matter for this Court to decide. *Marbury v. Madison*, 1 Cranch 137, 5 U.S. 137, 177, 2 L.Ed. 60 (1803). Defendants do not argue and even explicitly disclaim reliance on *Chevron* deference. *Opp.* at 15, n. 8. They concede by acquiescence all Plaintiff's arguments on *Chevron. App.* at 39.

Defendants reverse the onus of proof claiming "Plaintiff offers little evidence to back up this counterfactual, relying principally upon his own use of particular braced pistols." *Opp.* at 16.

8

It is Defendants' duty to prove braced pistols are SBRs. Plaintiff relied on the complete administrative record of Defendants repeatedly holding braces do not make pistols into SBRs. Defendants falsely claim "Plaintiff also appears to rely on manufacturers' descriptions of these weapons as determinative of their design and intended use." Plaintiff's argument was that *Defendants* are improperly relying on marketing materials that braces may be placed against the shoulder. *App.* at 39. Agency instigated such statements with its classifications. Defendants assert, "the fact that a particular brace-equipped pistol may be designed to *also* allow effective single-handed fire is not dispositive of whether the weapon is designed, made, and intended to be fired from the shoulder." *Opp.* at 18. According to the Rule of Lenity and the Supreme Court's holding in *Thompson/Contender*, the better statement is, "The fact that a particular brace-equipped pistol may be designed to *also* allow firing from the shoulder is not dispositive of whether the weapon is designed, made, and intended to be fired with one hand."

4.  <u>The Rule Is Unconstitutionally Vague.</u>

Plaintiff's *Application* showed Defendants' criteria did not put the public on notice of what conduct violates the law. *App.* at 21—26. The Rule does not state what amount of rear surface area would constitute a rifle stock. It provides no minimum or maximum weights or lengths indicating a brace is a stock. It does not define how "unusable" a scope can be to conclude eye relief is too short. It does not state how it will measure length of pull. No one could assess the legality of their actions based on "manufacturer marketing materials" or "likely use in the community." Defendants rely on inapposite authority for a vague city ordinance claiming Plaintiff unreasonably demands "granular explication," citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). *Opp.* at 21. In the instant case, Defendants establish criteria by which persons with braced pistols could be punished with felony charges, up to ten years in prison, a $250,000 fine, loss of violative firearms,

and permanent loss of Second Amendment rights. "To be constitutional, a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Skilling v. United States*, 130 S. Ct. 2896, 292728 (2010); *United States v. Bruffy*, 466 F. App'x 239, 20 n.* (4th Cir. 2012). Without any measurement standards for the seven factors the Rule relies upon, Defendants' subjective judgment, and the arbitrary use of factors not contained in the NFA and GCA, the Rule is unconstitutionally vague and overbroad.

5. The Rule's Regulatory Analysis Was Atrocious.

An unethical decision maker can justify practically any course of action by putting his thumb on the scale favoring his preferred action. This typically involves trumping up the benefits of the preferred alternative, underestimating its costs, doing the opposite for all other alternatives, and ignoring feasible alternatives. That is exactly what the Agency does in this Rule.

Plaintiff is not relying on EO 12,866; EO 13563, and OMB Circular A-4 as the source of his right to relief, nor is he arguing violations of these invalidate a rule, *per se*. These guidance documents provide agencies, the public, and this Court information about what constitutes a "good" regulatory analysis. The further from this guidance the Agency departs, the more the Court can be assured Defendants failed to meet their statutory requirements. Courts have long invalidated rules that fail to "determine as best it can the economic implications of the rule it has proposed." *Chamber of Commerce v. Sec. and Exch. Com'n*, 412 F.3d 133, 143 (D.C. Cir. 2005); *Public Citizen v. Fed. Motor Carrier Safety*, 374 F.3d 1209, 1221 (D.C. Cir. 2004). Agencies must demonstrate they used reasoned decision making. *State Farm* at 52. An agency's failure to provide adequate explanations for its decision is grounds for remand or invalidation. See e.g., *Williams Gas Processing-Gulf Coast Co., L.P. v. FERC*, 475 F.3d 319, 329 (D.C. Cir. 2006). Failure to

10

reasonably respond to comments raised during notice-and-comment rulemaking is arbitrary and capricious. *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 449 (D.C. Cir. 2012); *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 626 F.3d 84, 94 (D.C. Cir. 2010). Courts invalidate rules for failure to consider regulatory alternatives also achieving rule objectives. *Off. Comm. of United Church of Christ v. FCC*, 779 F.2d 702, 714 (D.C. Cir. 1985); *Wilderness Watch, Inc. v. U.S. Fish & Wildlife Serv.*, 629 F.3d 1024, 1039 (9th Cir. 2010); *Chamber of Commerce* at 144. Where a party raises facially reasonable alternatives, the agency must either consider those alternatives or give some reason for declining to do so. *Laclede Gas Co. v. F.E.R.C.*, 873 F.2d 1494, 1498 (D.C. Cir. 1989).

   *a.  The Rule Did Not Monetize or Quantify Rule Benefits or Explain Causation.*

   OMB Circular A-4 and Executive Orders 12866 and 13563 provide substantial guidance for agency rulemaking. Like the APA, they seek to prevent executive agencies from burdening the public with costly and onerous regulations not justified by their costs and to ensure agencies consider less-costly alternatives. Conducting a cost-benefit analysis is not just an exercise of government efficiency, but a statutory requirement. The Agency is required to measure "as best it can the economic implications of the rule." *Chamber of Commerce* at 143; *Public Citizen* at 1221.

   Agencies should monetize rule benefits whenever possible. *OMB Cir. A-4*, p. 2, ECF 17-1 at 28. Defendants try to evade this requirement by mere assertion it is not possible to do so, *Opp.* 24, but nowhere in the Rule did Defendants explain why it was not possible to do so. Plaintiff's *Application* showed in great detail how Defendants could have, but did not, estimate Rule benefits. *App.* at 12—15. Defendants conducted no threshold analysis of "How small could the value of the non-quantified benefits be . . . before the rule would yield zero net benefits?" *OMB Cir. A-4*, p. 2.

The Rule contains no explication of how the purported benefits flow from the Rule's provisions. Defendants make conclusory claims that it prevents "circumvention" of the NFA and has benefits to "public safety." In NFA hearing testimony, Defendants explicitly stated they did not expect criminals to pay the tax or register their firearms:

> it deals with the requirement of licensing if a person is to take any weapon across State lines. And I am assuming in all this, of course, that the criminal elements are not going to obtain permits and they are not going to obtain licenses, and they are not going to be able to bring themselves within those protective requirements. Therefore, when we capture one of those people, we have simply a plain question to propound to him – where is your license; where is your permit? If he cannot show it, we have got him and his weapons and we do not have to go through an elaborate trial, with all kinds of complicated questions arising. That is the theory of the bill. *NFA Hearings, Committee on Ways and Means, House of Representatives, Seventy-Third Congress, Second Session on H.R. 9066* at 10.

Defendants may not assume more. The Rule will have *zero* effect on criminals and only burden law-abiding gun owners. The Rule did attempt to estimate how many lives are lost or injuries sustained *solely* by reason of braced pistols. It merely relied on a handful of anecdotes – two shootings and fewer than 200 "traces" or investigations involving braced pistols *over an eleven year period*. 88 FR 6499. Assuming *arguendo* braces were the but-for cause of these crimes, there are only 18.2 crimes committed with braces per year out of up to *seven million* braces in circulation. Put another way, only about 0.0003% of braces are annually used in crimes.

But braces are not the but-for cause of these incidents. Defendants cannot claim their Rule would have saved 20 lives in Boulder and Dayton and prevented 200 other criminal incidents because in the absence of braces, criminals have other immediately available alternatives: pistols without braces, rifles, shotguns, handguns, and violating the NFA by using SBRs.

The Rule does not explain how its provisions will enhance public safety  much less quantify the extent to which it will do so. How many lives will be saved? How many crimes averted? Will

12

people intent on committing murder obey the Rule? Defendants impotently claim "Benefit to public safety is difficult to quantify, and thus, it is sufficient for the agency to 'exercise [its] professional judgment' to determine the important of 'non-quantified benefits . . . in the context of the overall analysis." *Opp.* at 23—24. That costs or benefits are difficult to measure "does not excuse [an agency] from its statutory obligation to determine as best it can the economic implications of the rule it has proposed." *Chamber of Commerce* at 143; *Public Citizen* at 1221.

 *b. The Rule Deliberately Undercounted Costs.*

 Defendants low-balled the number of braced pistols in circulation. They conducted no sensitivity analysis to determine the break-even point when the number of braced pistols is large enough that costs exceed benefits. *OMB Cir. A-4*, p. 3. Defendants failed to issue an Advance Notice of Proposed Rulemaking seeking public information for its cost estimate. Defendants relied on unnamed "subject matter experts" and "field offices." 88 FR 6560. "A good analysis is transparent. It should be possible for a qualified third party reading the report to see clearly how you arrived at your estimates and conclusions." *OMB Cir. A-4*, p. 3. Rather than rig the game in favor of their desired outcomes, Defendants' duty is to stretch assumptions to their breaking point.

 Defendants misrepresent Plaintiff's argument about a paper from the Congressional Research Service. *Opp.* at 24. The issue was not whether the CRS's estimate of up to forty million braced pistols was accurate. The issue was there were other sources of estimates for the number of braced pistols that Defendants did not even attempt to look for, much consider. "In informal rulemaking it is 'desirable' that agency 'independently amass [and] verify the accuracy of' data. *Chamber of Commerce* at 142, citing *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 737 F.2d 1095, 1124 (D.C. Cir. 1984). "[U]ncertainty . . . does not excuse [an agency] from its statutory obligation to do what it can to apprise itself – and hence the public and the Congress – of the

economic consequences of a proposed regulation before it decides whether to adopt the measure. *Chamber of Commerce* at 144.

Defendants' argue that "The parties thus appear to agree that braces are not weapons or arms and serve no useful purpose except as attachment to firearms." *Opp.* at 35. By this statement, Defendants *admit* their Rule renders braces useless for any conceivable purpose and destroying their value – a cost Defendants did not include in their analysis.

Defendants confuse the length of the "40-page discussion of costs" with its quality. *Opp.* at 24. Defendants failed to account for braced pistols made from pre-2012 receivers and pistols, bare receivers transferred as "Other," and privately made receivers.

    *c. The Rule Withdrew Its Economic Basis for the Rule.*

Defendants flip Plaintiff's argument about negative externalities on its hed. *Opp.* at 25. Plaintiff argued the NPRM and prior rules relied on the existence of negative externalities as a basis for their economic analysis. NPRM at 30845, 86 FR 27738, 87 FR 24715, 83 FR 66544. In a bizarre response, Defendants say the "[final] Rule did not" rely on negative externalities. *Opp.* at 25. But that's exactly the point. Defendants *withdrew* that economic basis for the rule, knocking the legs out from under its own analysis! OMB Circular A-4 discusses at length how to use market failures to justify an agency rule.[3] ECF 17-1 at 30. Indeed, the Agency relied on that market failure *because* of OMB Circular A-4. Defendants try to turn lead to gold by claiming, "that ATF omitted one of the NPRM's justifications in response to critical public comments . . . reflects a responsive rulemaking process, not a flawed cost-benefit analysis." *Opp.* at 25. While the acknowledgment

---

[3] A *market failure* is a situation where the free market fails to obtain socially-optimal levels of production, consumption, and allocation. Examples of market failures include externalities, public goods, natural monopolies, asymmetric information, moral hazard, and adverse selection.

there are no negative externalities does reflect some responsiveness to the comments, Defendants fail to understand the absence of negative externalities guts its analysis of net benefits.

### d.  The Rule Failed to Consider Alternative Regulatory Approaches

Defendants argue they need only consider policy alternatives that are "significant, viable, and obvious." *Opp.* at 26. That is only partially true. Defendants are required to consider alternatives proffered by the public in public comments, which the Agency summarily rejected. Agency is also required to *explain* why alternatives are not viable.

The "no change" alternative is always the most obvious alternative regulatory approach, and serves as a natural baseline for comparing other courses of action, including the final rule. *OMB Cir. A-4*, pp. 2, 11, 15—16. Yet the Agency failed to adequately analyze the *status quo* by simply saying that it has no costs or benefits. RIA at 7. Agency did not discuss any of the qualitative or quantitative advantages of the *status quo*. It did not explain why the *status quo* would result in harm to public safety. Defendants claim, "The Department considered but cannot adopt the 'no change' alternative because it would result in the status quo – the manufacturing, making, and possession of unregistered NFA firearms. *Opp.* at 26. This amounts to saying "We reject the status quo because it is the status quo." Agency claims that the 'no change' alternative will not address its concerns. *Opp.* at 26. As Plaintiff proved, there are no concerns. Braced pistols are almost never used in crimes. Braces cause infinitesimal marginal damage.[4] Lawful uses of braced pistols outnumber unlawful uses millions to one. Gun control laws are *inherently* not cost-effective

---

[4] Marginal damages are different from total damages. The Rule cannot claim credit for saving every life of persons who were or would be killed *with* braced pistols. It can only claim credit for lives lost *because of* braced pistols. Defendants have not shown that putting a brace against one's shoulder has more than an infinitesimal marginal effect on the outcome of a shooting.

because they sweep too broadly to regulate tens of millions of law-abiding people because of the actions of a few criminals who would not obey the law anyway.

### C.  The Rule, NFA, and GCA Violate the Second Amendment

Plaintiff has demonstrated with evidence, unrebutted by Defendants in their *Opposition*, that short-barreled rifles and shotguns were in common use for lawful purposes stretching back even before the ratification of the Second Amendment. *Compl.* ¶¶ 69—78; ECF 17-1, Figs. 24— 32. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *New York State Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, at *25 (June 23, 2022). As bearable arms, it cannot be gainsaid that SBRs and SBSs are presumptively protected by the Second Amendment. *Bruen* at "[T]o justify a firearm regulation the government must demonstrate that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Bruen* at *2. Defendants can not and did not do so. There was no regulation of these firearms until the National Firearms Act of 1934, which is under review in this Court in the newfound light of *Bruen*. Defendants have had nearly a year since the decision in *Bruen* to research the history of firearm regulation in the United States for the laws they enforce and the rules they implement, and they have marshalled nothing.

Defendants' reliance on cases finding that silencers are accessories are both erroneous and inapposite. *Opp.* at 35. The law *explicitly* regards silencers as firearms, not accessories. 26 U.S.C. § 5845(a)(7); 18 U.S.C. § 921(a)(3)(C). Further, Defendants' reference to silencers has no apparent connection to Plaintiff's arguments that a braced pistol is a bearable arm.

Defendants' argue a braced pistol would "remain an effective weapon" without a brace. *Opp.* at 35. The argument is specious when one considers that sights and scopes are also firearm accessories that do not prevent the use of the firearm, but they greatly facilitate use for their

intended purposes. For Second Amendment protections to have any meaning, they must also extend to accessories commonly used with firearms including ammunition, magazines, braces, sights, scopes, holsters, lights, and lasers. It's also worth noting that Defendants have no authority to regulate firearm accessories, thus they cannot regulate attaching those accessories to guns.

Defendants argue the Rule and NFA do not ban any firearms. *Opp.* at 35. Defendants should take note of this fact when they assert that short-barreled rifles are "dangerous and unusual." Congress did not ban NFA-regulated weapons, they only made them "legal for a price." "There are rights of constitutional stature whose exercise a State may not condition by the exaction of a price." *Western Union Tel. Co. v. Kansas*, 216 U.S. 1; *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967). This reveals the true intent of the NFA to skirt the Second Amendment.

In claiming SBRs are dangerous and unusual, Defendants point to *Heller*, 554 U.S. at 625. *Opp.* at 37. Yet there have been no cases squarely addressing the *factual* issue of whether SBRs are dangerous or unusual. They merely rely on a default decision by the U.S. Supreme Court in *United States v. Miller*, 307 U.S. 174 (1939), which was undefended because the appellee had died. The Supreme Court refused to take judicial notice that short-barreled shotguns had been commonly used in national defense. Reliance on *Miller* does not foreclose suits seeking to prove what Miller failed to do – provide evidence short-barreled rifles and shotguns are in common use for lawful purposes, and they are not more dangerous than identical longer-barreled weapons.

Nor can Defendants rely on political puffery of the Gun Control Act of 1968 declaring "short barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection." *Opp.* at 38. "The Supreme Court has said repeatedly, in cases above cited, that the courts must 'determine independently', or some equivalent expression, the facts when constitutional questions of congressional power are presented." *National Maritime Union of*

*America v. Herzog*, 78 F. Supp. 146, 184 (D.D.C. 1948) "Congress has no power, by mere legislative fiat, to create a fact or to change a fact." *Nat'l Labor Relations Bd. v. Mackay Radio & Telegraph Co.*, 92 F.2d 761, 762 (9th Cir. 1937). "Congress cannot establish its own power by a mere affirmation of fact." *National Maritime Union of America v. Herzog*, 78 F. Supp. 146, 185 (D.D.C. 1948). "It is well settled that a factual reality can not be changed or overcome by mere legislative fiat and that a legislative declaration which is clearly contrary to the actual facts will not be recognized or sanctioned in a judicial proceeding." *Hope Natural Gas Company v. The West Virginia Turnpike Commission*, 143 W. Va. 913, 105 S.E.2d 630. If Congress or Defendants could declare by legislative fiat that certain guns are "dangerous and unusual," then they could simply declare handguns to be such and regulate them notwithstanding the contrary result in *Bruen* itself.

Plaintiff demonstrated with scientific evidence that SBRs are less dangerous than identical firearms with longer barrels because they have slower projectiles and less kinetic energy. *App.* at 30. Plaintiff showed braced pistols are *less* concealable than identical pistols without braces. ECF 17-1 at 8, Fig. 37. They are certainly less concealable than handguns.

Defendants argue that nearly four million short-barreled rifles fails to meet an arbitrary minimum numerical threshold for what is in "common" use. *Opp.* at 39. As the *Application* explains, whether a firearm is in common use is *not* an exercise of counting guns. The proper analysis is whether the guns are commonly used by law-abiding citizens for lawful purposes. Examples of weapons that are *not* common and are dangerous are rocket launchers, hand grenades, land mines, anti-aircraft missiles, and 40mm chain guns. These do not include weapons that are obviously bearable arms used for lawful purposes like sporting, hunting, or self-defense. Using Defendants' own argument, all but six states permit ownership of short-barreled rifles. *Opp.* at 40.

18

As purported historical analogues, Defendants claim the NFA rests "upon centuries of similar taxation and registration requirements." Yet all Defendants' cited authorities gloss over the fact that unlike taxes that were intended to raise revenue, the NFA was designed and intended to price regulated firearms out of the market for the vast majority of Americans – an effective ban intended to evade the Second Amendment. None of Defendants' cited authorities nor any not cited have considered whether the NFA tax is constitutional given the newfound precedent in *Bruen*. "The government may not tax the exercise of a constitutionally protected right. *Northeast Ohio Coalition for the Homeless v. City of Cleveland*, 105 F.3d 1107, 1109 (6th Cir. 1997); *Deja Vu of Nashville, Inc. v. Metropolitan Government*, 274 F.3d 377, 395 (6th Cir. 2001).

In their recitation of historical laws relating to inspecting, registration, licensing, etc., Defendants could not cite a single Founding era law prohibiting short-barreled rifles or shotguns. Defendants provided no historical analogues of prohibiting *concealable* weapons as opposed to *concealed* weapons. Congress has no plenary police powers to reduce crime in the several states. *United States v. Hill*, 927 F.3d 188, 212 (4th Cir. 2019).

## D.   The Rule Addresses a Major Question that Congress Did not Delegate

In response to Plaintiff's arguments that the Rule addresses "decisions of vast economic and political significance," *App.* at 35, Defendants simply respond that it is not a major question without any substantive argument. *Opp.* at 32. This Rule directly affects, by the Agency's own estimates, three to seven million people owning braced pistols across the entire nation. It affects thousands of small businesses including manufacturers of braces and pistols, retailers, and distributors. It brings all of these people under the ambit of the NFA and GCA under threat of felony criminal charges for peaceful possession of lawful firearms that, until recently, Defendants insisted were unregulated by the NFA.

Defendants argue this issue is not "novel" or "unprecedented." *Opp.* at 32. As evidence, Agency points to its general authority for "issuing rules clarifying terms" rather than addressing the *specific* use of its authority in the instant Rule. *Id.* It is certainly of very recent vintage that Defendants began to regulate firearm accessories as making NFA-regulated firearms. Defendants repeatedly claim in this Rule and others that their *changes* in interpretation are merely "clarifications." They repeatedly claim these reinterpretations, which impose substantial criminal liability, are to redress "confusion." What Defendants decry as "confusion" are unfavorable court decisions finding against them in criminal prosecutions, and Defendants are changing terms to "regulate itself right." As best as Plaintiff can tell from Defendants' public data, there are about 641,000 registered short-barreled rifles in circulation. The Rule is adding an additional *three to seven million* Title I firearms to its purview and control that were formerly unregulated by the NFA and Title II of the GCA. This is most certainly a "transformative expansion [in the agency's] regulatory authority" as Defendants put it. *Opp.* at 33.

**E.   The Rule Imposes *Ex Post Facto* Criminal Liability.**

By publicly stating for the first time in Agency rulemaking that 18 U.S.C. § 922(r) applies not just to importers but end users, and that SBRs are "not for sporting purposes," the Rule turns Plaintiff and hundreds of thousands of people who converted foreign-made firearms into SBRs into instant felons. The Rule claims that this violation cannot be cured simply by replacing foreign-made parts with American-made parts because the violation occurs at *assembly*. 88 FR 6564. Yet Defendants approved the making of Plaintiff's numerous foreign-made pistols into SBRs. Defendants have never issued a parts list for Plaintiff's guns to determine which, if any, parts needed to be replaced prior to making the SBRs. Indeed, some foreign-made pistols cannot be made 922(r) compliant because of a lack of an aftermarket of U.S. made parts. In any event, §

20

922(r) violates the Second Amendment because Plaintiffs firearms are bearable arms presumptively protected by that amendment. There is no question the foreign made pistols Plaintiff purchased were lawful. Merely putting a stock on those pistols does not constitute the assembly of a regulated firearm as contemplated by the statute. Defendants presumption that SBRs cannot be used for sporting purposes is clearly at odds with the facts; such weapons *are* indeed used for sporting purposes such as hunting, shooting, and competitions. *App.* at 41.

**F.   Plaintiff Will Suffer Irreparable Harm.**

Because Plaintiff seeks a permanent injunction on the merits under F.R.C.P. 65(a)(2), a showing of irreparable harm is unnecessary if Plaintiff proves his right to relief under the summary judgment standards. Plaintiff has easily proven the Rule is unlawful. Defendants admit that a violation of Constitutional rights can constitute irreparable harm. *Opp.* at 43. Defendants are too clever by half claiming "the criminal penalties associated with failure to register a weapon from the NFA, not the Rule itself." *Opp.* at 44. The Rule explicitly invokes the authority of the NFA for rulemaking, it defines braced pistols as SBRs purportedly under NFA and GCA definitions, and the Rule imposes legal obligations on Plaintiff based directly on that interpretation.

**G.   Public Interest and Balance of Equities Favor Plaintiff.**

Defendants assert benefits of public safety they have not proven. Plaintiff's *Application* proved the Rule is all costs and zero benefits. Defendants have made no showing that any lives would be lost by enjoining the Rule, temporarily, preliminarily, or permanently.

**H.   This Court Should Issue a Nationwide Injunction.**

Defendant pleads this Court to restrain relief no broader than necessary to redress Plaintiff's cognizable injuries, and to not issue a nationwide injunction. As Plaintiff's *Application*

explained, nationwide injunctions are warranted when the government relies on a "categorical policy," and when the facts would not require different relief for others similarly situated to the plaintiffs. *Roe v. Dep't of Def.*, 947 F.3d 207, 231—233 (4th Cir. 2020). Millions of gun owners throughout the Nation are in precisely the same boat as Plaintiff. They are all having their rights unlawfully restricted, their property damaged or lost, having the same legal obligations imposed, and facing the same felony criminal liability. A district court did not abuse its discretion in issuing a nationwide injunction when, by a policy's nature, adversely affected persons were spread throughout the country and enjoining the policy only as to the plaintiff would cause inequitable treatment the law (or the U.S. Constitution) was designed to protect. *Hias, Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021). It is simply untenable for this Court to enjoin the Rule solely for Plaintiff's benefit when so many people suffer identical injuries.

## CONCLUSION

For the foregoing reasons, this Court should order a preliminary and/or permanent injunction, hold the Rule unlawful, and set it aside pursuant to 5 U.S.C. § 706.

EXECUTED ON April 10, 2023.

-s-
Robert M. Miller, Ph.D.
4094 Majestic Ln., #278
Fairfax, VA 22033
(415) 596-2444
RobMiller44@hotmail.com

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 10, 2023, a copy of the foregoing

<u>REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR</u>

<u>PRELIMINARY INJUNCTION</u> was delivered in person to the Court.

I caused a copy of this filing to be served by CM/ECF and email to:

KIRSTIN K. O'CONNOR
Assistant U.S. Attorney
Office of the U.S. Attorney
Justin W. Williams U.S Attorney's Building
2100 Jamieson Ave
Alexandria, VA 22314
Tel: (703) 299-3799
Fax: (703) 299-3983
Email: kirstin.o'connor@usdoj.gov

-s-

Robert M. Miller, Ph.D.
4094 Majestic Ln, #278
Fairfax, VA 22033
(415) 596-2444
RobMiller44@hotmail.com